# SUPREME COURT OF THE UNITED STATES

ROWAN COUNTY, NORTH CAROLINA
*v.*
NANCY LUND, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 17–565.   Decided June 28, 2018

The petition for a writ of certiorari is denied.

JUSTICE THOMAS, with whom JUSTICE GORSUCH joins, dissenting from the denial of certiorari.

This Court's Establishment Clause jurisprudence is in disarray. Sometimes our precedents focus on whether a "reasonable observer" would think that a government practice endorses religion; other times our precedents focus on whether a government practice is supported by this country's history and tradition. See *Utah Highway Patrol Assn.* v. *American Atheists, Inc.*, 565 U. S. 994, 997– 1001 (2011) (THOMAS, J., dissenting from denial of certiorari); *Van Orden* v. *Perry*, 545 U. S. 677, 694–697 (2005) (THOMAS, J., concurring). Happily, our precedents on legislative prayer tend to fall in the latter camp. See, *e.g., Town of Greece* v. *Galloway*, 572 U. S. \_\_\_ (2014); *Marsh* v. *Chambers*, 463 U. S. 783 (1983).

Yet the decision below did not adhere to this historical approach. In ruling that Rowan County must change the prayers it uses to open its board meetings, the Court of Appeals for the Fourth Circuit emphasized that the county's prayers are led by the legislators themselves, not by paid chaplains or guest ministers. This analysis failed to appreciate the long history of legislator-led prayer in this country, and it squarely contradicted a recent decision of the Sixth Circuit. I would have granted Rowan County's petition for certiorari.

## I

Rowan County, North Carolina, is governed by a five-member Board of Commissioners (Board). The Board convenes twice a month, in meetings that are open to the public. Each meeting begins with a prayer, which the commissioners take turns leading. Prayers usually begin with an invitation ("Let us pray," "Let's pray together," "Please pray with me") and end with a communal "Amen." Because the current commissioners are all Christians, their prayers tend to reference "Jesus," "Christ," or the "Savior." But the Board does not require the commissioners to profess any particular religion, or require the prayers to have any particular content. The content of the prayer is entirely up to the commissioner giving it.

Three residents of Rowan County, who were offended by the Board's prayers, sued the county, alleging violations of the Establishment Clause. The District Court entered summary judgment in the residents' favor, 103 F. Supp. 3d 712, 713 (MDNC 2015), but a divided panel of the Fourth Circuit reversed, 837 F. 3d 407, 411 (2016). On rehearing en banc, the full Fourth Circuit affirmed the District Court's initial decision. 863 F. 3d 268, 275 (2017).

Disagreeing with the earlier panel, the en banc court began by distinguishing this Court's decision in *Town of Greece*, which upheld the prayer policy of the town of Greece in New York. The prayers in Greece were given by "guest ministers," the Fourth Circuit explained, while the prayers in Rowan County are given by the commissioners. See 863 F. 3d, at 277–278. The Fourth Circuit deemed legislator-led prayer more suspect under the Establishment Clause because it "identifies the government with religion more strongly" and "heightens the constitutional risks posed by requests to participate and by sectarian prayers." *Id.,* at 278. Since the prayers in Rowan County are legislator led, the Fourth Circuit concluded that *Town of Greece* does not apply and, thus, it "must decide whether

[Rowan] [C]ounty's prayer practice, taken as a whole," is constitutional. 863 F. 3d, at 280.

The Fourth Circuit held that it was not, for a "combination" of four reasons. *Id.,* at 281. First, the prayers in Rowan County are given exclusively by the commissioners. *Id.,* at 281–282. Second, of the 143 prayers that the Fourth Circuit analyzed, 139 "invoked" Christianity, only four were nonsectarian, and at least 11 "'promote[d]'" Christianity. *Id.,* at 283–286. Third, the commissioners "told attendees to rise and often invited them to pray." *Id.,* at 286. Fourth, and finally, the prayers took place in "the intimate setting of a municipal board meeting," where the Board often exercises "quasi-adjudicatory power over such granular issues as zoning petitions, permit applications, and contract awards." *Id.,* at 287–288.

For these four reasons, the Fourth Circuit held that Rowan County's prayer practice violated the Establishment Clause. Five judges dissented, contending that the Fourth Circuit's decision was inconsistent with this Court's precedents and this country's "long and varied tradition of lawmaker-led prayer." See *id.,* at 301–323 (opinion of Agee, J.).

II

I would have granted certiorari in this case. The Fourth Circuit's decision is both unfaithful to our precedents and ahistorical. It also conflicts with a recent en banc decision of the Sixth Circuit.

While the Fourth Circuit stated that a "combination" of factors made the Board's prayers unconstitutional, *id.,* at 281, virtually all of the factors it identified were present in *Town of Greece.* The Fourth Circuit noted that the Board's prayers were typically Christian and occasionally promoted Christianity at the expense of other religions. But so did the prayers in *Town of Greece.* See 572 U. S., at \_\_\_– \_\_\_ (slip op., at 10–18). The Fourth Circuit stressed that

the commissioners often asked attendees to rise and invited
them to pray. But the prayergivers in *Town of Greece*
made the same invitations. See *id.,* at ___–___ (plurality
opinion) (slip op., at 20–21). The Fourth Circuit thought
that audience members would be pressured to participate
in the prayers, given the intimate setting of Board meet-
ings and its adjudicatory authority. But these same pres-
sures were present in *Town of Greece.* See *id.,* at ___ (slip
op., at 18); *id.,* at ___–___ (THOMAS, J., concurring in part
and concurring in judgment) (slip op., at 7–8).

The only real difference between this case and *Town of
Greece* is the person leading the prayer. Prayers in Rowan
County are led by the commissioners, while prayers in
Greece are led by guest ministers. The Fourth Circuit
leaned heavily on this distinction to justify conducting its
own free-floating evaluation of Rowan County's prayers.
See 863 F. 3d, at 280. But what it should have done,
under our precedents, is examine whether "history shows
that the specific practice [of legislator-led prayer] is per-
mitted." *Town of Greece*, *supra*, at ___ (slip op., at 8). If
the Fourth Circuit had conducted that inquiry, it would
have found a rich historical tradition of legislator-led
prayer.

For as long as this country has had legislative prayer,
legislators have led it. Prior to Independence, the South
Carolina Provincial Congress appointed one of its mem-
bers to lead the body in prayer. See Brief for State of West
Virginia et al. as *Amici Curiae* 9 (States Brief). Several
States, including West Virginia and Illinois, opened their
constitutional conventions with prayers led by convention
members instead of chaplains. See Brief for Members of
Congress as *Amici Curiae* 10 (Congress Brief). The histor-
ical evidence shows that Congress and state legislatures
have opened legislative sessions with legislator-led prayer
for more than a century. See States Brief 8–19; Congress
Brief 8–9. In short, the Founders simply "did not intend to

prohibit a just expression of religious devotion by the legislators of the nation, even in their public character as legislators." S. Rep. No. 376, 32d Cong., 2d Sess., 4 (1853).*

The Sixth Circuit, also sitting en banc, recently surveyed this history and upheld a municipal prayer policy virtually identical to Rowan County's. See *Bormuth* v. *County of Jackson*, 870 F. 3d 494 (2017). The Sixth Circuit acknowledged that its decision was "in conflict with the Fourth Circuit's" but found the latter "unpersuasive," *id.,* at 509, n. 5—not least because the Fourth Circuit "apparently did not consider the numerous examples of [legislator-led] prayers" in our Nation's history, *id.,* at 510. Thus, the Sixth and Fourth Circuits are now split on the legality of legislator-led prayer. State and local lawmakers can lead prayers in Tennessee, Kentucky, Ohio, and Michigan, but not in South Carolina, North Carolina, Virginia, Maryland, or West Virginia. This Court should have stepped in to resolve this conflict.

I respectfully dissent.

––––––––––

\*In addition to having little basis in history, the Fourth Circuit's decision has little basis in logic. It is hard to see how prayers led by sectarian chaplains whose salaries are paid by taxpayers—a practice this Court has upheld, see *Marsh* v. *Chambers*, 463 U. S. 783 (1983)— could be *less* of a government establishment than prayers voluntarily given by legislators. See *Bormuth* v. *County of Jackson*, 870 F. 3d 494, 523 (CA6 2017) (en banc) (Sutton, J., concurring).